DAVID S. GORBATY, Judge.
bin this appeal, defendants contend that the jury erred in finding the Quarter House Condominium Association (“Quarter House”) negligent, and in failing to exclude from evidence Quarter House’s offer to pay plaintiffs medical bills. For the reasons set forth below, we reverse.

FACTS AND PROCEDURAL HISTORY

Mr. and Mrs. Trant filed suit for injuries sustained by Mr. Trant on March 22, 1998 while in the Quarter House Condominium building. Mr. Trant was walking past a fire door in the lobby when the door was suddenly opened, knocking him down. The man who opened the door has not been identified.
Plaintiffs filed suit alleging negligence against Quarter House and its insurer, United Fire & Casualty Company (“United Fire”). After a jury trial, judgment was rendered in favor of plaintiffs. Quarter House was found to be 90% at fault in causing Mr. Trant’s injuries, and the unknown third party was assigned 10% of the fault. Mrs. Trant was awarded $15,000.00 for loss of consortium. Mr. Trant was awarded $20,000.00 for past pain and suffering, $20,000.00 for past medical expenses, $20,000.00 for future pain and suffering, and $40,000.00 for future medical expenses. Defendants subsequently filed this appeal.
| ^DISCUSSION
In their first assignment of error, defendants assert that there is no evidence to support a conclusion that Quarter House was negligent in causing the accident, or that the door was an unreasonably dangerous defect.
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989). In Mart v. Hill, 505 So.2d 1120 (La.1987), the Louisiana Supreme Court posited a two-part test for the reversal of a factfinder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Id. at 1127 (quoting Arceneaux v. Domingue, 365 So.2d at 1333 (La.1978)).
*799 This test dictates that the appellate court must do more than simply review the record for some evidence that supports or controverts the trial court’s finding. Id. The appellate court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
Louisiana Civil Code article 2317.1 provides in pertinent part:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Plaintiffs bear the burden of proof at trial, and cannot prevail by merely showing that an accident occurred on the defendant’s premises. Plaintiffs offered |sno evidence that the fire door, or any other part of the premises, was in any way defective or unreasonably dangerous. To the contrary, the testimony that was presented at trial established that the premises was safe, well-maintained, and in compliance with applicable standards.
The testimony of Paul Dorsey, the developer of the Quarter House project, established that there was no construction defect involving the fire door, much less an unreasonably dangerous defect. Mr. Dorsey testified that he was not aware of any other accidents involving the door. The door, which is in the lobby next to the elevators, is a fire door that leads to escape stairs. Dorsey testified that, when plans were made to develop the building into its present state, he hired an architect and a contractor, and submitted the plans and received approval from the City Planning Commission, the Historic District Landmark Commission, and the Louisiana State Fire Marshall. The property was designed according to the Code and according to what the Department of Safety and Permits would allow.
Vincent Saladino, the chief operating engineer for Quarter House, confirmed that there had never been an accident similar to Mr. Trant’s involving the fire door in the eleven years he had been employed there. He also stated that he had no personal knowledge or evidence that any “near misses” had occurred.
Saladino testified that, on the lobby side of the fire door, there is a glowing exit sign near the door that marks the door and its location. He further testified that, for as long as he could remember, the stairwell side of the door had a sign on it that said, “Open door very slowly.” In response to the suggestion that some kind of restriction could be made on the ability of the door to open, Saladino stated, “[F]ire marshals are very strict about those doors being free, clear, and easily opened.”
| ¿For a defect to create an unreasonable risk of harm, for purposes of premises liability under Louisiana law, the defect must be of such a nature as to constitute a dangerous condition that would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Ports v. Circle K. Stores, Inc., W.D.La.2005, 395 F.Supp.2d 442. There was nothing inherently dangerous about the fire door. It served a necessary purpose, and in fact a required one, as a means of egress in case of a fire. The fact that the door might be opened did not create a dangerous condition that would be expected to *800 cause injury. Rather, it was an essential and expected part of its function. Plaintiffs presented no evidence at trial of any negligence by Quarter House, and no evidence whatsoever of an unreasonably dangerous defect in the fire door. Plaintiffs failed to carry their burden of proof. As such, we hold that the jury’s findings are manifestly erroneous, and that there is no reasonable factual basis for its conclusions. This assignment of error has merit.
In light of this ruling, the remaining assignment of error is moot, and we need not address it.

CONCLUSION

Accordingly, for the foregoing reasons, the judgment of the trial court is reversed.

REVERSED.